**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAMBRIDGE MANAGEMENT GROUP, LLC, | Civil No. 12-3577 (NLH/KMW) |
| Plaintiff, | **OPINION** |
| v. | |
| HORACE RUBLE BAKER IV, et al., | |
| Defendants. | |

**APPEARANCES:**

Raul J. Sloezen, Esquire
Law Office of Raul Sloezen, Esquire
40 Walnut Street
Oaklyn, New Jersey 07436
(201) 644-8178
    *Attorney for Plaintiff Cambridge Management Group, LLC*

Jonathan Peter Vuotto, Esquire
Riker, Danzig, Scherer, Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962
    *Attorney for Defendants Horace Ruble Baker, IV, Sheila*
    *Baker, Warner R. Wilson, Esq., and Wilson & Epstein, LLC*

**<u>HILLMAN</u>, District Judge**

    This matter comes before the Court by way of motion [Doc.

No. 6] by Defendants Horace Ruble Baker, IV, Sheila Baker, Warner

R. Wilson, Jr., and Wilson and Epstein, LLC seeking to dismiss

Plaintiff's complaint pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2), and 12(b)(6) for lack of subject

matter jurisdiction, lack of personal jurisdiction, and failure

to state a claim upon which relief can be granted.  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motion to dismiss is denied.

## I.   PROCEDURAL HISTORY AND JURISDICTION

Plaintiff Cambridge Management Group, LLC ("Cambridge") brings this action against Defendants Horace Ruble Baker, IV ("Baker") and his wife Sheila Baker (collectively "the Baker Defendants"); Warner R. Wilson, Jr., ("Wilson"), the law firm of Wilson and Epstein, LLC, ("W&E"), (collectively, "the Wilson Defendants"); and Lifeline Funding, LLC, doing business as US Claims ("US Claims") based upon a litigation funding agreement whereby Cambridge provided the Baker Defendants with a cash advance in relation to a personal injury law suit the Baker Defendants had filed in Georgia state court (hereinafter, "the underlying Georgia action").  In exchange for the cash advance of $25,000 plus various fees, Cambridge agreed to purchase, and the Baker Defendants agreed to sell, a portion of the potential proceeds from the underlying Georgia action.[1]

---

[1] In a related case captioned US Claims v. Horace Ruble Baker, IV, et al., 1:12-cv-02231 (NLH/AMD), also before this Court, Defendant US Claims brought its own independent action against Defendant Horace Ruble Baker and the Wilson Defendants (hereinafter, "the US Claims Action").  The US Claims Action arises out of a separate litigation funding agreement whereby Defendant Horace Baker conveyed an interest in the proceeds

Cambridge originally brought this action in the Superior Court of New Jersey, Chancery Division, Bergen County by filing a verified complaint seeking to compel Defendants to arbitrate this matter based on the failure of the Baker and Wilson Defendants to pay Cambridge pursuant to the terms of the litigation funding agreement.  (Second Am. Notice of Removal [Doc. No. 10] ¶ 1; Compl. [Doc. No. 10-1] ¶¶ 40-43.)  The Baker and Wilson Defendants removed the case to this Court on June 13, 2012 pursuant to 28 U.S.C. § 1446 asserting that removal was proper because the Court had jurisdiction over this matter under 28 U.S.C. § 1332 in that the "true" parties in interest were completely diverse and the amount in controversy was met.

---

resulting from the same underlying Georgia action to US Claims. (See US Claims v. Baker, et al., 1:12-cv-02231, Op. [Doc. No. 22] 3-4, Dec. 27, 2012.)

In that action, US Claims allegedly paid Defendant Baker $36,250.00, including $6,250.00 for fees and costs in exchange for a $39,070.00 interest in the proceeds of the underlying Georgia action.  (Id. at 4-5.)  The litigation funding agreement at issue in the US Claims Action was executed on approximately November 29, 2007, (id. at 4), and predates the litigation funding agreement at issue between the parties to the present case which was executed on approximately July 14, 2008.  (Compl. [Doc. No. 10-1] ¶ 17.)

Rudolph V. De George II, Esq. entered his appearance on behalf of US Claims in the US Claims Action, but no attorney has entered an appearance on behalf of US Claims in the present action.  Presuming Mr. De George is representing US Claims in both matters, the Court reminds counsel that a proper notice of appearance in the present action is required because artificial entities, such as limited liability companies along with corporations, may only appear in federal court through licensed counsel.  See Rowland v. Cal. Men's Colony, 506 U.S. 194, 202-03 (1993).

On June 19, 2012, the Court issued an Order to Show Cause identifying several deficient allegations regarding the citizenship of the parties and directing the Baker and Wilson Defendants to file an amended notice of removal to correct these deficiencies or face dismissal for lack of subject matter jurisdiction.  (Order to Show Cause [Doc. No. 4] 2-3, June 19, 2012.)  The Baker and Wilson Defendants filed an amended notice of removal on June 25, 2012 which, despite correcting most of the deficiencies outlined by the Court, still failed to properly allege the citizenship of Defendant US Claims.  As a result, the Court issued a second Order to Show Cause on August 3, 2012, requiring that the Baker and Wilson Defendants to file a second amended notice of removal.  (Order to Show Cause [Doc. No. 9] 3-6, Aug. 3, 2012.)

Based on the averments made in the Second Amended Notice of Removal ("the Notice") and the supplemental submissions of the parties since that time, the Court was satisfied that it could properly exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship and an amount in controversy in excess of $75,000.  In briefing the pending motion, however, the parties raised several issues regarding whether the exercise of diversity jurisdiction by this Court remains proper.  Accordingly, the Court addresses these issues before turning to the merits of the motion to dismiss.

4

Initially, Cambridge contends that this case should be remanded[2] to the Superior Court of New Jersey, Chancery Division, Bergen County for the following reasons: (1) because complete diversity is lacking between the parties; and (2) because the claim does not meet the $75,000 amount in controversy requirement since Cambridge filed a demand for arbitration in the amount of $74,999.99.  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss and In Further Supp. of Compl. to Compel Arbitration [Doc. No. 7-5] (hereinafter, "Cambridge's Opp'n"), 9-10.)  With regard to the issue of complete diversity, the Baker and Wilson Defendants seemingly agree that Defendant US Claims is not a

---

[2] The Baker and Wilson Defendants argue that Plaintiff's request to remand made in its opposition to the motion to dismiss is improper. (Defs.' Reply 12.)  According to Defendants, if Plaintiff believed that the removal was defective, a request to remand should have been made by formal motion within the thirty-day time limit set forth by 28 U.S.C. § 1447(c).  This argument is unavailing because Plaintiff is clearly not challenging removal on the basis of a procedural defect under Section 1447(c), but rather is challenging subject matter jurisdiction.
Section 1447(c) governs motions to remand made on the basis of any defect "other than lack of subject matter jurisdiction" and requires such motions be made within thirty days after the filing of a notice of removal.  28 U.S.C. § 1447(c).  However, where remand is sought on the basis that the Court lacks subject matter jurisdiction, as Cambridge assert here, the thirty-day time limit is not applicable, and motions to remand on that basis can be made at anytime.  See Ariel Land Owners, Inc. v. Dring, 351 F.3d 611, 613 (3d Cir. 2003) (concluding that under Section 1447(c) it "is clear that, if based on a defect other than jurisdiction, remand may only be effected by a timely motion" but that "a jurisdictional defect may be raised at any time.") (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996) ("This 30-day limit does not apply, however, to jurisdictional defects[.]")

5

diverse party in this case.  (Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. [Doc. No. 8] (hereinafter, "Defs.' Reply"), 13) ("Also, it is clear that Plaintiff has no valid claim against US Claims and that US Claims was added to the case [as a defendant] to defeat jurisdiction.")  However, as set forth below, Cambridge, the Baker Defendants, and the Wilson Defendants are incorrect.  By Text Order dated August 10, 2012, the Court permitted this case to proceed upon the filing of the Notice finding that complete diversity existed among all parties to this action as set forth in the Notice.

Here, as a limited liability company ("LLC"), Cambridge's citizenship is determined by the citizenship of each of the members of this LLC.  Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010).  The Notice, its attached exhibits, and the Certification of James Giordano submitted by Plaintiff in response to the pending motion, establish that James Giordano, a citizen of the state of New Jersey, is the President and sole member of Cambridge.  (Second Am. Notice of Removal [Doc. No. 10] ¶ 11; Ex. B to Second Am. Notice of Removal [Doc. No. 10-3] 1; Certification of James N. Giordano [Doc. No. 7-4] ¶¶ 1-7.) Accordingly, Cambridge is considered a citizen of the state of New Jersey for purposes of diversity jurisdiction.

Similarly, Defendant W&E is a citizen of the state of Georgia because it is also a limited liability company with two

6

members, each of whom are citizens of the state of Georgia.  (See Second Am. Notice of Removal [Doc. No. 10] ¶ 13.)  Further, Defendant US Claims is a citizen of the Commonwealth of Pennsylvania because it is a limited liability company with two members – Darryl Levine and Harris Wildstein – both of whom are citizens of Pennsylvania.[3]  (See id. ¶¶ 15-17; see also Exs. B & C to Second Am. Notice of Removal.)  As to the individual Defendants, the Baker Defendants are citizens of the state of Montana.  (See Second Am. Notice of Removal, [Doc. No. 10] ¶ 12.) Defendant Wilson is a citizen of the state of Georgia.  (See id. ¶ 13.)  Despite the parties' conclusory assertions to the contrary in their briefing, complete diversity of citizenship exists in this case because Plaintiff is a New Jersey citizen while Defendants are citizens of Pennsylvania, Montana, and Georgia.

Cambridge also argues for remand on the basis that its "claim does not meet the monetary jurisdictional requirements"

---

[3] To the extent Cambridge argues that the presence of US Claims in this action destroys complete diversity of citizenship because US Claims "is a New Jersey LLC[,]" (see Pl.'s Opp'n 9), Cambridge is mistaken.  The states wherein a limited liability company is registered to do business are not determinative for purposes of diversity jurisdiction.  A limited liability company registered to do business in the state of New Jersey is only considered a citizen of New Jersey if one or more of its member is in fact a citizen of New Jersey.  Because the members of US Claims are not New Jersey citizens, the fact that US Claims is registered to do business there, or even established under the law of that state, is irrelevant to this consideration.

because it filed a Demand for Arbitration with the AAA on
approximately July 11, 2012 in the amount of $74,999.99, less
than the $75,000 amount set forth by 28 U.S.C. § 1332.
(Cambridge's Opp'n 10.)  Specifically, Cambridge relies on Morgan
v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) for the proposition that
remand is proper where a complaint expressly limits damages to a
sum certain below the jurisdictional threshold unless the
removing defendant can prove to a legal certainty that the amount
in controversy actually concerns the statutory minimum.
(Cambridge's Opp'n 10.)  The Baker and Wilson Defendants dispute
this contention arguing instead that the Court's subject matter
jurisdiction is determined at the time that the action is
commenced and remains unaffected by subsequent events.  (Defs.'
Reply 12.)  Thus, Defendants assert that Plaintiff's "apparent
reduction" of the amount in controversy "is ineffective to defeat
diversity jurisdiction."  (Id. at 13.)

     With respect to the amount in controversy, Defendants have
the better of this argument.  Generally, the "well-established
rule" is "that diversity of citizenship is assessed at the time
the action is filed. ... [and] if jurisdiction exists at the time
an action is commenced, such jurisdiction may not be divested by
subsequent events."  Freeport-McMoRan, Inc. v. K N Energy, Inc.,
498 U.S. 426, 428 (1991).  However, as the Third Circuit has
explained, while subsequent events that reduce the amount in

controversy below the statutory minimum do not require dismissal, "'[a] distinction must be made ... between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action.'"  State Farm Mut. Auto. Ins. Co. v. Powell, 87 F.3d 93, 97 (3d Cir. 1996) (citations omitted).

At the time this action was commenced in this Court, on June 13, 2012, Cambridge's complaint clearly alleged that Cambridge was owed approximately $149,749.33 pursuant to the litigation funding agreement at issue.  (Compl. [Doc. No. 10-1] ¶ 31.) Cambridge's subsequent reduction of its damages to $74,999.99 by filing a Demand for Arbitration with the AAA on approximately July 11, 2012 cannot fairly be considered a subsequent revelation that the required amount was not in controversy at the time of removal.  State Farm, 87 F.3d at 97.  It is clear that Cambridge only reduced its demand on July 11, 2012 in an effort to avoid the Court's jurisdiction.  Accordingly, based on the assertion of damages at the time of removal, the Court is satisfied that the amount in controversy is met because the allegations contained in Plaintiff's complaint and the Notice sufficiently demonstrate that the damages sought in this action are in excess of $75,000 exclusive of interest and costs.

## II.  **BACKGROUND**

By way of background, Cambridge is a financial enterprise

which advances money to plaintiffs involved in personal injury
and other related litigation in exchange for purchasing a portion
of the potential proceeds of such litigation.  (Compl. [Doc. No.
10-1] ¶¶ 8-9.)  When Cambridge agrees to provide a plaintiff with
a cash advance, the parties enter a contract, sometimes referred
to as a litigation funding agreement, which provides that the
plaintiff only owes Cambridge money in accordance with a related
fee schedule if he or she recovers money in the underlying
litigation.[4]  (Id. ¶¶ 10-11.)  As alleged in the complaint, the
Baker Defendants were the plaintiffs in an underlying personal
injury action brought in the state of Georgia ("the underlying
Georgia action") filed as a result of a work related injury that
Baker suffered in January of 2006.  (Id. ¶¶ 13-14.)  The Baker
Defendants retained the Wilson Defendants to represent them in
the underlying Georgia action.  (Id. ¶ 12-15.)

Cambridge alleges that on approximately July 14, 2008
Cambridge provided the Baker and Wilson Defendants with the
"Plaintiff's Agreement to Pay Proceeds Contingent on Successful
Settlement, Judgment or Verdict and Receipt of Proceeds;

---

[4] Financial enterprises or management groups such as
Cambridge are commonly referred to as litigation funding
companies.  "Litigation funding" is considered a "relatively new
field" wherein "a lender provides funds to a plaintiff in planned
or pending litigation, or [provides funds to] the plaintiff's
attorney" in exchange for purchasing a interest in any potential
recovery.  Robin Miller, Annotation, Enforcement and Validity of
Litigation Funding Agreements, 72 A.L.R. 6th 385 (2012).

Agreement to Assign Proceeds" (hereinafter, "Agreement to Pay");
the "Plaintiff's Irrevocable Grant of Lien, Assignment of
Proceeds and Lien Payment Instructions" (hereinafter,
"Irrevocable Lien"); and the "Attorney Acknowledgment of
Irrevocable Lien and Assignment to Cambridge Management Group,
LLC" (hereinafter, "Attorney Acknowledgment"). (Id. ¶ 16; see
also Ex. A, Part 1 to Compl. 32-41.) Cambridge refers to these
documents collectively as the CMG Contract,[5] and asserts that the
Baker and Wilson Defendants executed the CMG Contract on July 14,
2008. (Compl. [Doc. No. 10-1] ¶ 17.) Pursuant to the CMG
Contract, after execution, Cambridge advanced the amount of
$25,000 to the Baker Defendants. (Compl. ¶¶ 16, 24.) Cambridge
alleges that under the terms of the CMG Contract, the Baker
Defendants instructed the Wilson Defendants to pay Cambridge
prior to any final distribution being paid to the Baker
Defendants. (Id. ¶ 19.) Moreover, no money was to be paid to
the Baker Defendants in the event of a dispute between the
parties. (Id. ¶ 18.)

Cambridge represents that several years after the execution
of the CMG Contract, in March of 2011, the Wilson Defendants
notified Cambridge by letter that the underlying Georgia action
had settled for $700,000.00 and provided Cambridge with a draft

---

[5] Throughout this Opinion, references to the CMG Contract
shall be construed as to refer to all three documents
collectively.

disbursement statement regarding the settlement. (Id. ¶ 25.)
Cambridge alleges, though, that it was advised by the Wilson
Defendants that no money could be disbursed at the time of
settlement because several outstanding liens needed to be
resolved. (Id.) According to Cambridge, the Wilson Defendants
continued to advise Cambridge for approximately one year that the
liens were still in the process of being resolved. (Id. ¶ 26.)
However, in April 2012, Cambridge learned of the US Claims action
filed in this Court in which Defendant US Claims brought a
separate suit alleging that the Wilson Defendants disbursed a
portion of the settlement proceeds to Horace Baker prior to
paying US Claims pursuant to another litigation funding
agreement. (Id. ¶ 27.)

Cambridge now similarly alleges that the Wilson Defendants
paid all, or a portion of, the settlement proceeds to the Baker
Defendants without paying either US Claims or Cambridge pursuant
to the parties' respective litigation funding agreements. (Id.
¶¶ 28, 41.) Cambridge further asserts that the Baker and Wilson
"Defendants have failed and refused to pay the amount due
[Cambridge] and have failed and refused to arbitrate" and that a
dispute remains between Cambridge and Defendants. (Id. ¶¶ 35,
42.) Pursuant to the CMG Contract, Cambridge seeks to enforce
the arbitration provisions of the agreement and alleges that any
and all disputes be arbitrated before the American Arbitration

12

Association in New Jersey.  (<u>Id.</u> ¶¶ 38, 43.)  Cambridge contends
that all Defendants are subject to the terms of the arbitration
agreement.  (<u>Id.</u> ¶ 44.)

## III. <u>DISCUSSION</u>

In the present motion, Defendants seek to dismiss
Plaintiff's complaint pursuant to Federal Rules of Civil
Procedure 12(b)(2) and 12(b)(6) for lack of personal jurisdiction
and failure to state a claim as to the Wilson Defendants, and
12(b)(1) for lack of subject matter jurisdiction as to the Baker
Defendants.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss
Pl.'s Comp. [Doc. No. 6-1] (hereinafter, "Defs.' Mem.") 1.)  The
Wilson Defendants' primary argument is that "[t]here are
insufficient minimum contacts to establish personal jurisdiction
over [them] in New Jersey."  (Defs.' Mem. 6.)

The Wilson Defendants alternatively argue that even if the
Court finds it can properly exercise personal jurisdiction over
the Wilson Defendants, the complaint must be dismissed for
failure to state a claim because the Wilson Defendants did not
agree to arbitrate with Cambridge.  (<u>Id.</u> at 8-10.)  The Baker
Defendants, on the other hand, argue that no claim or controversy
exists between them and Cambridge because the Baker Defendants
have not refused to arbitrate and have not contested the
arbitrability of Plaintiff's claim against them.  (<u>Id.</u> at 10.)
Thus, the Baker Defendants assert that the complaint must be

dismissed against them for lack of subject matter jurisdiction. (Id. at 10-12.)

### A.   Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (citations omitted).[6]

### B.   Rule 12(b)(6) Standard

---

[6] There is a "significant procedural distinction" between a motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule 12(b)(6).  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  "A Rule 12(b)(2) motion ... is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies.  Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.  . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations."  Id. (citation omitted).

In considering Defendants' motion pursuant to Rule 12(b)(6) for failure to state a claim, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950).  "[A] complaint must

15

do more than allege the plaintiff's entitlement to relief."
Fowler, 578 F.3d at 211; see also Phillips v. County of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's
Twombly formulation of the pleading standard can be summed up
thus: 'stating ... a claim requires a complaint with enough
factual matter (taken as true) to suggest' the required element.
This 'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element.") (citing Twombly, 550 U.S. at 556).  "The
defendant bears the burden of showing that no claim has been
presented." Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

### C.   **Rule 12(b)(1) Standard**

As the Third Circuit has held, "[f]ederal courts are courts
of limited jurisdiction, and when there is a question as to our
authority to hear a dispute, 'it is incumbent upon the courts to
resolve such doubts, one way or the other, before proceeding to a
disposition on the merits.'" Zambelli Fireworks Mfg. Co. v.
Wood, 592 F.3d 412, 418 (3d Cir. 2010) (citing Carlsberg Res.
Corp. v. Cambria Sav. & Loan Ass'n., 554 F.2d 1254, 1256 (3d Cir.
1977)).  A motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(1) challenges the existence of a federal court's
subject matter jurisdiction.  "When subject matter jurisdiction
is challenged under Rule 12(b)(1), the plaintiff must bear the

burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A motion to dismiss for lack of subject matter jurisdiction may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." D.G. v. Somerset Hills School Dist., 559 F. Supp. 2d 484, 491 (D.N.J. 2008). On a facial attack, "the court must consider the allegations of the complaint as true." Mortensen, 549 F.2d at 891. "A defendant can also attack subject matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint." D.G., 559 F. Supp. 2d at 491.

Upon a factual attack, by contrast, the court need not presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. Moreover, when considering a factual challenge to the Court's jurisdiction under Rule 12(b)(1), the Court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide

factual matters relating to jurisdiction." Cestonaro v. U.S., 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891).  The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed.  D.G., 559 F. Supp. 2d at 491.

IV.  **ANALYSIS**

    A.  **The Wilson Defendants**

        In addition to their argument that insufficient minimum contacts exist to support the exercise of personal jurisdiction, the Wilson Defendants assert that they executed only the Attorney Acknowledgment and therefore, "did not agree to any of the provisions of the [Agreement to Pay] between Plaintiff and the Baker Defendants other than those set forth in the Acknowledgment[,]" including the arbitration provision.  (Defs.' Mem. 7.)  The Wilson Defendants contend that they did not assume any duties or obligations to Cambridge other than those outlined in the Attorney Acknowledgment regarding the ministerial duties of disbursement of the proceeds and furnishing requested information to Cambridge.  (Id.)  The Wilson Defendants argue that they "clearly could not have 'reasonably anticipated being haled into court' in New Jersey based on the Acknowledgment" which does not contain any jurisdictional or forum selection provisions.  (Id.)  Along similar lines, the Wilson Defendants assert that even if the Court may exercise personal jurisdiction

18

over them, Cambridge's complaint must be dismissed under Rule
12(b)(6) because the Wilson Defendants did not agree to arbitrate
disputes with Cambridge.  (Id. at 9-10.)

Having reviewed the relevant documents of the CMG Contract
attached to Cambridge's complaint, the Court finds, for the
reasons set forth below, that the Wilson Defendants' conduct here
so closely and directly related to the litigation funding
transaction in dispute that the Wilson Defendants are subject to
the personal jurisdiction of this Court and to the arbitration
provision of the CMG Contract.

As the Supreme Court has recognized, the requirement that a
court have personal jurisdiction over a defendant is an
individual right which "can, like other such rights, be waived."
Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de
Guinee, 456 U.S. 694, 703 (1982).  "A forum selection clause in a
contract is one way in which to effectuate this waiver."
Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC, No.
2:06-cv-03543-JAG, 2007 WL 2156367, at *3 (D.N.J. July 25, 2007)
(citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315
(1963)).  "In federal court, the effect to be given a contractual
forum selection clause in diversity cases is determined by
federal not state law.  Because [q]uestions of venue and the
enforcement of forum selection clauses are essentially
procedural, rather than substantive, in nature, federal law

applies in diversity cases irrespective of <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938)." <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 877 (3d Cir. 1995) (internal citations and quotations omitted).

Under federal law, a forum selection clause is presumptively valid unless the party objecting to it can show that enforcement of the clause would be unreasonable under the circumstances. <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972). As explained by the Third Circuit, a party may demonstrate that a forum selection clause is unreasonable and unenforceable by showing:

> (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

<u>Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.</u>, 709 F.2d 190, 201 (3d Cir. 1983), <u>cert. denied</u>, 464 U.S. 938 (1983), <u>overruled on other grounds</u>, <u>Lauro Lines S.R.L. v. Chasser</u>, 490 U.S. 495 (1989).

Significantly for purposes of this case, other federal courts have recognized that "'a range of transaction participants, parties and *non-parties*, should benefit from *and be subject to* forum selection clauses.'" Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988)

(quoting Clinton v. Janger, 583 F. Supp. 284, 290 (N.D. Ill. 1984) (citing Coastal Steel Corp., 709 F.2d at 202-03)) (emphasis added).  Several courts in this District have similarly recognized that "where a third party's conduct is 'closely related to the contractual relationship,' the forum selection clause applies to the third party."  Affiliated Mortg. Protection, LLC v. Tareen, No. 06-4908, 2007 WL 203947, at *4 (D.N.J. Jan. 24, 2007);[7] see also Demodulation, Inc. v. Applied DNA Sciences, Inc., No. 11-0296, 2011 WL 6756069, at *2-3 (D.N.J. Dec. 22, 2011) (concluding that forum selection clause contained in confidentiality agreement executed by plaintiff and only one of several defendants logically tied together plaintiff's claims against all defendants particularly where plaintiff's claims were "inextricably intertwined"); Foley & Lewis Racing, Inc. v. Burling, No. 07-972, 2008 WL 544655, 3 (D.N.J. Feb. 27, 2008) (finding company CEO who signed an agreement only on behalf of the company itself was closely related to the contractual relationship therefore had standing to enforce the agreement's forum selection clause on his own behalf because the CEO signed the agreement in his capacity as company CEO and derived benefit

---

[7]See also Four River Exploration, LLC v. Bird Resources, Inc., No. 09-3158, 2010 WL 216369, at *3 (D.N.J. Jan. 15, 2010) ("Courts in this district have consistently held that non-signatory third-parties who are 'closely related to [a] contractual relationship' are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationships.")

from the agreement); <u>Druckers', Inc. v. Pioneer Elecs. (USA),</u>
<u>Inc.</u>, No. 93-1931, 1993 WL 431162, *7-8 (D.N.J. Oct. 20, 1993)
(explaining that a non-signatory plaintiff was subject to a forum
selection clause in the contract executed by his company with
regard to a claim that defendant's tortious conduct caused the
company to default on a debt thereby resulting in satisfaction
against the non-signatory plaintiff as personal guarantor);
<u>Cinema Laser Technology, Inc. v. Hampson</u>, No. 91-1018, 1991 WL
90913, at *3 (D.N.J. May 30, 1991) (concluding that individuals
who did not sign a joint venture agreement were still subject to
the agreement's forum selection clause where their relationship
to the company — the signatory — made litigation in another forum
foreseeable).

The Wilson Defendants argue that they only signed the
Attorney Acknowledgment and therefore did not agree to any of the
provisions of the Agreement to Pay — including its waiver of
personal jurisdiction, its choice of forum and law clause, and
its arbitration provision.  It appears though, that the Wilson
Defendants fail to recognize the significance of certain language
in the Attorney Acknowledgment.  Specifically, by signing the
Attorney Acknowledgment, the Wilson Defendants expressly
acknowledged receipt of the Agreement to Pay and the Irrevocable
Lien and undeniably agreed "to distribute any proceeds of the
[underlying Georgia] Litigation ... in accordance with the terms

22

of **all** Agreements signed and notarized by ... [Baker] in favor of Cambridge[.]" (Attorney Acknowledgment, Ex. A, Part 1 to Compl. [Doc. No. 10-1] 41) (emphasis added).  The Attorney Acknowledgment continues, reiterating that the

> balance of the proceeds of the [underlying Georgia] Litigation, IF ANY, shall not be paid to [Baker], unless and until Plaintiff's Irrevocable Lien to CMG is satisfied in full. ... I [Warner R. Wilson] hereby consent and agree to fully execute this document to pay Cambridge ... all funds due them at the close of this case, before final distribution to [Baker] or (his or her) successors and/or assigns.

(Id.)

The CMG Contract at issue in this action, which the Wilson Defendants expressly acknowledge receipt of in the Attorney Acknowledgment, contains a clause entitled "Choice of Forum and Law in the Event of a Dispute(s)" set forth in Paragraph 10 of the Agreement to Pay.  Paragraph 10 clearly specifies that any and all disputes arising with respect to the interpretation and enforcement of the Agreement would be resolved by arbitration or by a court of competent jurisdiction.  Paragraph 10 provides in part:

> (a)  In the event of any disputes hereunder, Plaintiff agrees that Plaintiff's attorney shall not disburse any proceeds to Plaintiff prior to settlement or resolution of the dispute, ...
> (b)  Plaintiff acknowledges and agrees that any and all disputes that arise concerning the terms, conditions, interpretation or enforcement of this Agreement shall be determined through arbitration pursuant to the Rules and methods outlined by the American Arbitration Association in New Jersey, or in a Court of competent

23

> jurisdiction, at the election of CMG.  Plaintiff
> agrees that the laws of the State of New Jersey
> shall control the interpretation of this
> Agreement.

(Agreement to Pay, Ex. A, Part 1 to Compl. [Doc. No. 10-1] 36, ¶

10.)  Operating in conjunction with Paragraph 10's choice of

forum and law clause, is paragraph 8 of the Agreement to Pay.

Paragraph 8, in no uncertain terms, waives the right to challenge

questions of personal jurisdiction or venue with respect to

enforcing the parties obligations regarding the litigation

funding transaction. (Id. ¶ 8) ("Plaintiff further waives all

questions of personal jurisdiction or venue for purposes of

enforcing this Agreement.")

Having acknowledged receipt of the Agreement to Pay, the

Wilson Defendants should also be well aware of paragraph 14,

which provides that all of the individual documents collectively

constitute the agreement between the parties.  Paragraph 14

states that:

> [t]he Parties here to agree that this Agreement;
> the Plaintiff's Agreement to Pay Proceeds
> contingent on Successful Settlement, Judgment or
> Verdict and Receipt of Proceeds and Agreement to
> Assign Proceeds, *the Attorney Acknowledge [sic] of*
> *Irrevocable Lien and Assignment to CMG* and
> Plaintiff's Irrevocable Grant of Lien, Assignment
> of Proceeds and Lien Payment Instructions
> constitute the entire agreement of the parties
> hereto and that all prior and contemporaneous
> discussions between an among the parties are
> merged herein.

(Id. ¶ 14) (emphasis added).  Moreover, pursuant to paragraph

24

3(c) of the Agreement to Pay, each of these documents — including the Attorney Acknowledgment — is considered part of the overall agreement and made a part thereof by incorporation.  (See id. ¶ 3(c)) ("Plaintiff's Irrevocable Grant of Lien, Assignment of Proceeds, Lien Payment Instructions and Attorney Acknowledgment of Lien (collectively, the 'Agreements'), all of which are incorporated herein by this reference and made part hereof.")

In the present case, Cambridge specifically seeks to enforce the Wilson Defendants' obligation to pay Cambridge its interest and alleges a breach in that the Wilson Defendants did not pay Cambridge and made improper distributions to the Baker Defendants.  Thus, the alleged conduct by the Wilson Defendants of which Cambridge complains is closely, and even directly, related to the contractual relationship between the Baker Defendants and Cambridge, as set forth in the Attorney Acknowledgment, the Agreement to Pay, and the Irrevocable Lien. The Wilson Defendants have allegedly failed to pay Cambridge pursuant to the terms set forth in each of these respective documents — all of which require payment pursuant to the Agreement and prohibit the distribution of any proceeds to the Baker Defendants prior to full satisfaction of Cambridge's lien and the resolution of any dispute between the parties.  (Compare, e.g., Compl. ¶ 29 (asserting "Defendant attorneys made a partial payment to Horace [Baker] but have not paid" Cambridge); Compl. ¶

41 (alleging "Defendant attorneys paid all, or a portion of the
case settlement proceeds to the Baker Defendants but have not
paid" Cambridge), with Agreement to Pay, Ex. A, Part 1 to Compl.
[Doc. No. 10-1] 34, ¶ 4(b) (instructing Baker's attorney that
payment to Cambridge must be made "immediately after payment of
Attorney's Fees ... and prior to final distribution to Plaintiff
of any settlement, judgment or verdict."); Irrevocable Lien, Ex.
A, Part 1 to Compl. [Doc. No. 10-1] 39, ¶¶ 3-4 (same); Attorney
Acknowledgment, Ex. A, Part 1 to Compl. [Doc. No. 10-1] 41
(same).))

Additionally, the Irrevocable Lien explicitly identifies the
Wilson Defendants as the attorneys representing the Baker
Defendants and definitively refers the Wilson Defendants "to the
terms delineated specifically herein and [to the terms set forth]
in the '[Agreement to Pay and Assign Proceeds]' and the
"[Attorney Acknowledgment]', all of even date herewith[.]"
(Irrevocable Lien, Ex. A, Part 1 to Compl. [Doc. No. 10-1] 39, ¶
2.)  The Irrevocable Lien also delineates that the Wilson
Defendants must "pay directly to Cambridge ... sums due and owing
for the purchase of proceeds from me and for which I have granted
this lien[.]"  (Id. ¶ 3.)  The Attorney Acknowledgment similarly
obligated the Wilson Defendants to "to fully execute this
document to pay Cambridge ... all funds due them at the close of
this case, before final distribution to [Baker] or (his or her)

26

successors and/or assigns."  (Attorney Acknowledgment, Ex. A,
Part 1 to Compl. [Doc. No. 10-1] 41.)

Furthermore, not only does the Agreement to Pay make
specific reference to the Attorney Acknowledgment, it explicitly
states that all of the CMG Contract documents together –
including the Acknowledgment – constitute the entire agreement of
the parties.  In executing the Attorney Acknowledgment, the
Wilson Defendants not only acknowledged receipt of the Agreement
to Pay, but also agreed to distribute the proceeds from the
underlying Georgia litigation "in accordance with the terms of
all Agreements signed and notarized by [Baker] in favor of
Cambridge[.]"  Given the interdependent nature of these documents
and the language utilized in each, the Court finds that the
Wilson Defendants were on notice that terms of the Agreement to
Pay, the Irrevocable Lien, and the Attorney Acknowledgment, were
all necessarily and directly related to the litigation funding
transaction in which they participated.

Under these circumstances, the fact that the Wilson
Defendants did not sign the Agreement to Pay itself does not
render the choice of law and form clause contained in Paragraph
10 unenforceable against them.  The transaction between Cambridge
and the Baker Defendants unequivocally required direct
involvement by the Wilson Defendants to ensure payment of
Cambridge's interest in the underlying Georgia action.  The

27

Agreement to Pay expressly named the Wilson Defendants, and
repeatedly authorized and required the Wilson Defendants to pay
Cambridge's interest.  The Agreement to Pay, the Irrevocable
Lien, and the Attorney Acknowledgment are inherently intertwined
in the litigation funding transaction at issue.  Because it is
clear that the Wilson Defendants' conduct is closely and directly
related to the contractual relationship between the Baker
Defendants and Cambridge, the choice of forum and law clause and
the waiver of personal jurisdiction contained in the Agreement to
Pay are applicable to the Wilson Defendants in this case.  See
Affiliated Mortg. Protection, 2007 WL 203947, at *4; see also
Manetti-Farrow, Inc., 858 F.2d at 514 n.5.  Accordingly, pursuant
paragraphs 8 and 10 of the Agreement to Pay, the Wilson
Defendants have "waive[d] all questions of personal jurisdiction
or venue for purposes of enforcing" the CMG Contract at issue and
have agreed "that any and all disputes that arise concerning the
terms, conditions, interpretation or enforcement of this
Agreement shall be determined through arbitration ... or in a
court of competent jurisdiction, at the election" of Cambridge.

Here, Cambridge elected to bring its claim in the Superior
Court of New Jersey seeking to compel all Defendants to
arbitration before the American Arbitration Association, and the
Superior Court clearly qualifies as a court of competent
jurisdiction for this purpose.  Defendants then chose to remove

28

the case to this Court, wherein they are now subject to the Court's personal jurisdiction and to the arbitration provision of the Agreement to Pay as set out in paragraphs 8 and 10.[8]  Cf. Drucker's, Inc., 1993 WL 431162, at *8 ("To find otherwise, the Court 'would permit [a plaintiff] to sidestep a valid forum selection clause simply by naming [as a defendant] a closely related party who did not sign the clause[.]")

### B.    The Baker Defendants

The Baker Defendants argue, without citation to any authority, that there is no case or controversy for this Court to determine as between Cambridge and the Baker Defendants because they "do not contest that the [CMG Contract] is subject to a valid arbitration provision."  (Def.'s Mem. 12.)  Essentially, the Baker Defendants contend that Cambridge's complaint is moot at this time because they have conceded the validity of the arbitration provision, and ask the Court to dismiss Cambridge's complaint against them for lack of subject matter jurisdiction. The Court disagrees, and declines to dismiss the Baker Defendants on that basis.

"Mootness analysis traditionally begins with 'the

---

[8] Having determined that the Wilson Defendants are bound by the forum selection clause and the express waiver of personal jurisdiction in the Agreement to Pay and Assign Proceeds, the Court need not assess Defendants' arguments regarding whether sufficient minimum contacts exist between the Wilson Defendants and the state of New Jersey.

requirement of Article III of the Constitution under which the
exercise of judicial power depends upon the existence of a case
or controversy.'"   Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d
912, 914 (3d Cir. 1987) (citing North Carolina v. Rice, 404 U.S.
244, 246 (1971)).   One "common formulation for determining
whether a real controversy exists under Article III is that 'a
case is moot when the issues presented are no longer 'live' or
the parties lack a legally cognizable interest in the outcome.'"
Boilermakers, 815 F.2d at 915 (citation omitted).   "To establish
the existence of such a 'live' issue, there must be 'a real and
substantial controversy admitting of specific relief through a
decree of a conclusive character, as distinguished from an
opinion advising what the law would be upon a hypothetical state
of facts.'"   Id. (citing Aetna Life Insurance Co. v. Haworth, 300
U.S. 227, 241 (1937)).

In deciding the present motion, however, the Court
recognizes that "mootness is fundamentally a matter of degree;
[and] there is no precise test for ascertaining with precision
whether a particular claim has become moot."  Boilermakers, 815
F.2d at 915 (citing Babbitt v. United Farm Workers Nat'l Union,
442 U.S. 289, 297) ("The difference between an abstract question
and a 'case or controversy' is one of degree, of course, and is
not discernible by any precise test.").   Making this
determination is therefore a factual inquiry and the Court is

"guided primarily by pragmatic considerations."  Boilermakers,
815 F.2d at 915 (citation omitted).  "The availability of
effective relief is one measure of the existence of a continuing
controversy between parties with cognizable interests in the
outcome."  Id. at 915-16.

In this instance, the facts demonstrate that Cambridge's
claim is not moot merely because the Baker Defendants concede the
validity of the arbitration provision.  The parties have
submitted several letters to the Court establishing that the
American Arbitration Association ("the AAA") currently has in
place a moratorium on accepting new consumer debt collection
matters for arbitration.[9]  (Letter from Tara Parvey, Director at
the AAA [Doc. No. 14] 1, Oct. 18, 2012) (indicating that the
moratorium will remain "in effect until such time as the AAA
determines that adequate and broadly acceptable due process
protocols specific to these cases are in place.").

However, Cambridge has demonstrated that the AAA will in

_____

[9] "[T]he American Arbitration Association's previously
announced moratorium on debt collection arbitrations remains in
effect.  That moratorium was instituted based on public discourse
and an evaluation of the AAA's own experiences.  Matters included
in this moratorium are: consumer debt collections programs or
bulk filings and individual case filings in which the company is
the filing party and the consumer has not agreed to arbitrate at
the time of the dispute and the case involves a credit card bill
or, the case involves a telecom bill or the case involves a
consumer finance matter."  See American Arbitration Association,
"Notice on Consumer Debt Collection Arbitrations," available at,
http://www.adr.org/cs/groups/governmentandconsumer/documents/docu
ment/dgdf/mdey/~edisp/adrstg_012244.pdf.

fact accept debt collection matters such as this where a court order to arbitrate has been entered.  (Email from Tara Parvey, Director at the AAA [Doc. No. 15] 1-2, Oct. 29, 2012) (confirming that the "AAA complies with court orders and the parties ... [should] keep us updated with any developments."); (see also Letter from Karen D'Amico, Case Manager at the AAA [Doc. No. 17-1] 1, Jan. 31, 2013) (acknowledging receipt of a demand for arbitration in a different matter related to a dispute over the collection of a consumer's debt and explaining that "[w]hile such a case may be covered by the ... moratorium on consumer debt arbitration ..., we note that this matter was directed to arbitration by court order.  Because a court has ordered that this dispute must be resolved by arbitration, the AAA will proceed with administration[.]")

It is clear that the Agreement to Pay provides the parties with a legal right to arbitration before the AAA in order to resolve disputes in this matter.  However, the parties are unable to take advantage of the arbitration provision in the Agreement and their rights thereunder based on the AAA's moratorium, unless and until, the Court enters an order directing the parties to arbitrate.  Without such an order from the Court, the Baker Defendants' representation that they do not contest the validity of the arbitration provision is, for all practical purposes, virtually meaningless to Cambridge.  The Baker Defendants'

consent to arbitrate before the AAA, standing alone, is insufficient to require the AAA to accept this matter for arbitration.  Rather, the AAA requires a court order.  Therefore, weighing the pragmatic concerns of this unique factual circumstance, the Court is convinced that Cambridge's claim is not moot and subject matter jurisdiction in this Court remains proper.  Because the entry of an Order directing the parties to arbitrate their claims before the AAA constitutes the availability of effective relief, the Court finds that there exists here a continuing controversy between parties with cognizable interests in the outcome.  Accordingly, the Court denies the Baker Defendants' motion to dismiss for lack of subject matter jurisdiction at this time.

**C.   Order to Show Cause**

With respect to court orders compelling arbitration of parties' claims, a typical case proceeds in the following manner. The plaintiff first files a complaint regarding a particular claim or claims, and the defendant subsequently files a motion seeking to compel the plaintiff to arbitrate the dispute, rather than proceed in the judicial forum.  Thereafter, the parties are afforded a sufficient opportunity to fully brief the issue before determination by the Court.

This case presents an unusual procedural wrinkle, though, in that Cambridge, as Plaintiff, filed a verified complaint in

33

state court seeking summary relief under New Jersey Court Rule
4:67-1(a) and asking the state court to compel all parties to
arbitration.  The New Jersey Superior Court entered an Order to
Show Cause on May 9, 2012, requiring Defendants to appear on July
2, 2012 and show cause why judgment should not be entered
compelling arbitration of the parties' claims.  Prior to that
July 2, 2012 show cause hearing, however, Defendants removed the
action to this Court.

     The entirety of the relief Cambridge seeks here is an order
compelling arbitration before the AAA.  However, based on the
procedural nuisances surrounding how this case progressed in both
the state court and in this Court, the parties have never fully
briefed the issues relevant on a typical motion to compel
arbitration.  The Court is not inclined to sua sponte issue an
order compelling arbitration here without first permitting the
parties an opportunity to present arguments on their respective
positions.  Accordingly, the Court picks up where the New Jersey
Superior Court left off and orders the parties to show cause
within fifteen (15) days of the date of this Opinion and its
accompanying Order, why the Court should not enter an Order
compelling arbitration of the claims in both this action, and the
related US Claims action, 1:12-cv-2231-NLH-AMD.

     The Court notes that at this time it appears that Cambridge,
the Baker Defendants, and Defendant US Claims, at a minimum, have

34

agreed to arbitrate and would thus consent to the entry of an Order by the Court compelling arbitration.  To the extent the Wilson Defendants object to the entry of such an Order, they must respond to the Order to Show Cause by presenting the Court with specific arguments regarding their objections and case law supporting their positions.  However, if the Wilson Defendants now find themselves willing to consent to arbitration before the AAA,[10] the parties in both matters are free to submit to the Court Consent Orders to Arbitrate for the Court's consideration.

**V.   CONCLUSION**

For the foregoing reasons, the Wilson Defendants' motion to dismiss [Doc. No. 6] is denied.  An Order consistent with this Opinion will be entered.


Dated: March 28, 2013                     s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[10] By letter to the Court dated January 17, 2013, the Baker and Wilson Defendants apparently recognized "the possibility that all claims in both cases may be sent to arbitration[.]" (Letter from Jonathan P. Vuotto, Esq., 1, Jan. 17, 2013.)